IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
NORTHERN AND SOUTHERN DIVISIONS

| | | |
|---|---|---|
| ELIZABETH GIRARD; BEULAH SLESSER; and SUZANNE MCLEOD as Personal Representative of the Estate of Hansell B. Malone, III, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | NO. 2:22-CV-22-FL |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

- - - - -

| | | |
|---|---|---|
| CYNTHIA BLACKMER as representative of the estate of David F. Blackmer; and FELICIA BAZEMORE as representative of the estate of Allen Ray Hardy, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | NO. 7:22-CV-123-FL |
| v. | ) ) | |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

- - - - -

| | | |
|---|---|---|
| SHARON MASON as the Administrator for the Estate of Rita Roseberry, Deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | NO. 7:22-CV-128-FL |
| UNITED STATES OF AMERICA, | ) ) | |
| Defendant. | ) | |

```
- - - - -
```

| | | |
|---|---|---|
| CLAUDIA MCCLARRIN; LINDA CRISP as representative of the estate of Michelle Causey; and PATRICIA WARREN as representative of the estate of Roseanne Warren, | )<br>)<br>)<br>)<br>)<br>) | |
| Plaintiffs, | )<br>) | NO. 7:22-CV-135-FL |
| v. | )<br>) | |
| UNITED STATES OF AMERICA, | )<br>) | |
| Defendant. | ) | |

```
- - - - -
```

| | | |
|---|---|---|
| ANDREA WEINER f/k/a Andrea Michelle Byron, | )<br>)<br>) | |
| Plaintiff, | )<br>) | NO. 7:22-CV-139-FL |
| v. | )<br>) | |
| UNITED STATES OF AMERICA, | )<br>) | |
| Defendant. | ) | |

These five cases arising under the Camp Lejeune Justice Act of 2022 ("CLJA") are before the court on motions to dismiss by defendant. (See Case Nos. 2:22-cv-00022-FL (DE 21); 7:22-cv-00123-FL (DE 26); 7:22-cv-00128-FL (DE 14); 7:22-cv-00135-FL (DE 23); 7:22-cv-00139-FL (DE 12)). The motions have been briefed fully, and the issues raised are ripe for ruling. For the following reasons, the motions are granted.

**BACKGROUND**

Plaintiffs commenced these suits in August 2022, asserting in each case an action under the CLJA to obtain "appropriate relief for harm that was caused by exposure to the water at Camp

Lejeune" for individuals who were exposed for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987.  Pub. L. No. 117-168, § 804(b).  Defendant moves to dismiss each case for lack of subject matter jurisdiction due to failure to exhaust administrative remedies.  Defendant relies in each instance on a declaration of Randall D. Russell ("Russell"), head of the Tort Claims Branch in the Admiralty and Claims Division of the Office of the Judge Advocate General, United States Department of the Navy ("Navy").  Plaintiffs oppose the motions to dismiss, relying in each case upon 1) a printout of an undated announcement by the Navy of a decision to deny "Camp Lejeune Federal Tort Claims Act Claims," and 2) administrative claim files related to each plaintiff.  Defendant replied, in each case, relying upon a second declaration by Russell.

**COURT'S DISCUSSION**

A.      Standard of Review

A motion to dismiss under Rule 12(b)(1) may either 1) assert the complaint fails to state facts upon which subject matter jurisdiction may be based, or 2) attack the existence of subject matter jurisdiction in fact, apart from the complaint.  Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).  Where a defendant raises a "facial challenge[ ] to [subject matter jurisdiction] that do[es] not dispute the jurisdictional facts alleged in the complaint," the court accepts "the facts of the complaint as true as [the court] would in context of a Rule 12(b)(6) challenge."  Kenny v. Wilson, 885 F.3d 280, 287 (4th Cir. 2018).  When a defendant challenges the factual predicate of subject matter jurisdiction, a court "is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment."  Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

B.  Analysis

Defendant argues that the instant actions must be dismissed for failure to exhaust administrative remedies as required by § 804(h) of the CLJA, because none of the plaintiffs presented a claim for relief under the CLJA to the government prior to commencing suit in this court. The court agrees.

The CLJA provides the following new "federal cause of action relating to water at Camp Lejeune," established on the date of enactment of the CLJA, August 10, 2022:

> An individual, including a veteran . . . or the legal representative of such an individual, who resided, worked, or was otherwise exposed (including in utero exposure) for not less than 30 days during the period beginning on August 1, 1953, and ending on December 31, 1987, to water at Camp Lejeune, North Carolina, that was supplied by, or on behalf of, the United States may bring an action in the United States District Court for the Eastern District of North Carolina to obtain appropriate relief for harm that was caused by exposure to the water at Camp Lejeune.

CLJA, § 804(b).  This court has exclusive jurisdiction and venue "over any action filed under subsection (b)," and the "burden of proof shall be on the party filing the action to show one or more relationships between the water at Camp Lejeune and the harm."  CLJA, §§ 804(c)(1) and 804(d).  In addition, the CLJA sets forth a standard of proof unique to this action, prohibits punitive damages, and precludes defenses of immunity and statutes of repose. See CLJA, §§ 804(c)(2), (f), (g), and (j).

The CLJA requires exhaustion of administrative remedies prior to filing such an action under the CLJA, through the following provision: "DISPOSITION BY FEDERAL AGENCY REQUIRED. – An individual may not bring an action under this section before complying with section 2675 of title 28, United States Code."  CLJA, § 804(h) (hereinafter the "exhaustion provision").  In turn, the cross-referenced statute is part of the Federal Tort Claims Act, which provides in pertinent part as follows:

> An action shall not be instituted upon a claim against the United States for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting

within the scope of his office or employment, unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing and sent by certified or registered mail.

28 U.S.C. § 2675(a) (hereinafter, § 2675 of the Federal Tort Claims Act).

In considering the exhaustion provision in the CLJA, the court is mindful that "[t]he doctrine of exhaustion of administrative remedies is well established in the jurisprudence of administrative law." Woodford v. Ngo, 548 U.S. 81, 88 (2006).[1] "Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims." Id. at 90. "Administrative law does this by requiring proper exhaustion of administrative remedies, which means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)." Id. "Otherwise, parties who would prefer to proceed directly to federal court might fail to raise their grievances in a timely fashion and thus deprive the agency of a fair and full opportunity to adjudicate their claims." Pakdel v. City & Cnty. of San Francisco, California, 141 S. Ct. 2226, 2230 (2021).

"Of paramount importance to any exhaustion inquiry is congressional intent." McCarthy v. Madigan, 503 U.S. 140, 144 (1992). "The best evidence of that purpose is the statutory text adopted by both Houses of Congress and submitted to the President." W. Virginia Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 98 (1991). "It is . . . a cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." Williams v. Taylor, 529 U.S. 362, 404 (2000). "[I]n looking to the plain meaning, we must consider the context in which the statutory words are used because we do not construe statutory phrases in isolation; we read statutes as a whole." Ayes v. U.S. Dep't of Veterans Affs., 473 F.3d 104, 108 (4th Cir. 2006).

---

[1] Internal citations and quotation marks are omitted from all citations in the court's analysis unless otherwise specified.

In addition, although the United States Court of Appeals for the Fourth Circuit has not had occasion to interpret the exhaustion provision in the CLJA, it and other courts of appeals have interpreted § 2675 of the Federal Tort Claims Act to "require two elements for sufficient presentment of a claim to an agency: 1) written notice sufficient to cause the agency to investigate, and 2) a sum-certain value on the claim." Ahmed v. United States, 30 F.3d 514, 517 (4th Cir. 1994); see, e.g., Glade ex rel. Lundskow v. United States, 692 F.3d 718, 722 (7th Cir. 2012) ("The administrative claim need not set forth a legal theory, but it must allege facts that would clue a legally trained reader to the theory's applicability."); Keene Corp. v. United States, 700 F.2d 836, 842 (2d Cir. 1983) (holding that presentment of a claim under the FTCA must provide "sufficient notice to enable the government to evaluate its exposure so far as liability is concerned").

Here, the CLJA evidences Congress's intent to require a plaintiff to present a claim for relief under the CLJA to the government prior to commencing suit in this court. This conclusion arises from the plain language of the exhaustion provision as well as the well-established exhaustion principles set forth above. Because the CLJA creates a new cause of action, which did not exist prior to enactment of the CLJA on August 10, 2022, the exhaustion provision necessarily requires presentment to the government of a claim arising out of that cause of action.

By requiring "disposition by federal agency" as a prerequisite for "bring[ing] an action under this section," the exhaustion provision presupposes the existence of the cause of action before exhaustion under the CLJA can take place. CLJA, § 804(h). Incorporating the requirements of § 2675 of the Federal Tort Claims Act does not expand the exhaustion provision in the CLJA. Rather, where § 2675 of the Federal Tort Claims Act requires "the claimant shall have first presented the claim to the appropriate Federal agency," the claim must be one arising under the CLJA. 28 U.S.C. § 2675(a).

The foregoing interpretation of the exhaustion provision is further necessitated by well-established principles of exhaustion and prior interpretations of § 2675 of the Federal Tort Claims Act. In particular, plaintiffs can only provide the government a "<u>fair and full opportunity</u> to adjudicate their claims" arising under the CLJA if they present them to the government after enactment of the CLJA. <u>Woodford</u>, 548 U.S. at 90 (emphasis added). To ensure "proper exhaustion" of such claims they must present them "so that the agency <u>addresses the issues on the merits</u>" under the standards set forth in the CLJA. <u>Id.</u> (emphasis added). Likewise, presentment of a claim after enactment of the CLJA, provides "cause [for] the agency to investigate" the claim under the standards of the CLJA. <u>Ahmed</u>, 30 F.3d at 517. Only a claim presented after the date of enactment of the CLJA provides "sufficient notice to enable the government to evaluate its exposure so far as liability is concerned," <u>Keene Corp.</u>, 700 F.2d at 842, or to "clue a legally trained reader to the theory's applicability." <u>Glade</u>, 692 F.3d at 722.

Thus, where plaintiffs in these actions have not brought forth evidence of the requisite exhaustion of administrative remedies after enactment of the CLJA, plaintiff's claims must be dismissed for lack of subject matter jurisdiction.

Plaintiffs nonetheless argue to the contrary that prior claims presented to the government for personal injuries under the Federal Tort Claims Act are sufficient to satisfy the requirements of the CLJA. For example, plaintiff Elizabeth Girard submitted a personal injury claim in the amount of $30,000,000.00 to the Navy on August 4, 2011, on the basis that her "father was in the Navy and stationed aboard Camp Lejeune from 1962-1965," and that she "has Lung Cancer at age 31 in addition to a tumor in left lung," and is "unable to have children." (Case No. 2:22-CV-22-FL, DE 24-3 at 2). David F. Blackmer, for whose estate plaintiff Cynthia Blackmer serves as representative, submitted a personal injury claim in the amount of $20,000,000.00 to the Navy on December 26, 2016, on the

basis that he "suffers with, among other health issues, esophageal cancer, which he believes is related to his exposure to contaminants via air, water, and soil while at Camp Lejeune."  (Case No. 7:22-CV-123-FL, DE 19-4 at 3).  These prior claims, which were denied by the Navy on January 24, 2018, and on reconsideration on August 5, 2022, are representative of prior claims submitted by all plaintiffs in the instant actions.

These prior claims do not satisfy the exhaustion requirements of the CLJA because they did not provide "cause [for] the agency to investigate" the claim under the standards of the CLJA, much less "sufficient notice to enable the government to evaluate its exposure so far as liability is concerned."  Ahmed, 30 F.3d at 517; Keene Corp., 700 F.2d at 842.  It was impossible to ensure "the agency addresse[d] the issues on the merits" under the standards set forth in the CLJA, where those standards were not yet in existence at the time the prior claims were submitted.  Woodford, 548 U.S. at 90.  Rather, as the claim denials make clear, the prior claims were denied for reasons applicable to the Federal Tort Claims Act that expressly are no longer applicable under the CLJA, such as statute of repose and immunity due to a "discretionary function exception" to liability.  (See, e.g., Case No. 2:22-CV-22 (DE 24-3 at 3-4).  Allowing plaintiffs' prior claims to satisfy exhaustion requirements of the CLJA would conflict directly with its substantive provisions, which materially have altered the government's liability exposure and basis for investigating the claims.

Plaintiffs argue that references to "actions" and "claims" in the CLJA and § 2675 of the Federal Tort Claims Act show that Congress intended for claims that existed before enactment of the CLJA to provide a basis for a cause of action under the CLJA.  For example, plaintiffs point to the "applicability" provision, which states the CLJA applies "only to a claim accruing before the date of the enactment of this Act."  CLJA § 804(j).  This is, however, beside the point.  The fact that a claim arising under the CLJA accrues prior its enactment does not mean that such a claim has been

exhausted properly in accordance with its terms. Accrual of a claim takes place by operation of law, whereas exhaustion requires affirmative conduct on the part of the plaintiff to present such a claim to the government. See Ahmed, 30 F.3d at 516.

Plaintiffs suggest that the facts alone alleged in their prior claims satisfy the exhaustion requirements of the CLJA, citing case law applying the Federal Tort Claims Act. This argument misses the mark for two reasons. First, under that case law, the degree to which facts alleged in a prior claim satisfy exhaustion requirements depends upon whether they provide "cause [for] the agency to investigate" the claim, Ahmed, 30 F.3d at 517, or sufficient notice to "enable the government to evaluate its exposure so far as liability is concerned" or "clue a legally trained reader to the theory's applicability." Keene Corp., 700 F.2d at 842; Glade, 692 F.3d at 722. Courts have declined to extend exhaustion to claims arising under different legal theories arising out of a common set of facts where that notice requirement is not satisfied. See, e.g., Ahmed, 30 F.3d at 517 (determining that personal injury claim was not exhausted, even though property damage claim was, because "while the SF 95 [claim form] refers . . . to a potential personal injury claim, one was never made and no sum certain was ever demanded") (emphasis added); Glade, 692 F.3d at 721 (holding that administrative claim for "battery by the therapist" does not exhaust a claim for "negligence by her supervisors in failing to detect and prevent her sexual battery of him"); Allen v. United States, 517 F.2d 1328, 1329–30 (6th Cir. 1975) (holding that claim assertion personal injury for loss of consortium did not exhaust "a claim for recovery of property damage which occurred in connection with the accident").

Second, this case does not involve consideration merely of whether plaintiffs' prior claims satisfy exhaustion requirements under the FTCA, but rather whether they satisfy exhaustion requirements under a statute that was not in existence at the time of the prior claims. None of the

9

cases cited by plaintiffs involve exhaustion for a statute that was not in existence at the time of prior claims. See, e.g., Glade, 692 F.3d at 721 (FTCA); Est. of Trentadue ex rel. Aguilar v. United States, 397 F.3d 840, 852 (10th Cir. 2005) (holding that "an intentional infliction of emotional distress claim" sufficiently exhausted later court claims under the FTCA based upon "the government's extreme acts of misconduct" including mutilation of an inmate's body); Brown v. United States, 838 F.2d 1157, 1161 (11th Cir. 1988) (holding that for purposes of exhaustion of an FTCA claim against the Veterans Administration, a "new administrative claim is unnecessary for a wrongful death action [following a personal injury action] because while a different legal injury is suffered, both actions are based on the same injury in fact").

In sum, cases cited by plaintiffs are inapposite because their prior administrative claims in this instance could not have provided notice to the government of the applicability of a legal theory not yet in existence. Where plaintiffs have failed to exhaust administrative remedies for their claims under the CLJA, their claims must be dismissed for lack of subject matter jurisdiction.[2]

## CONCLUSION

Based on the foregoing, the court GRANTS the instant motions to dismiss. (Case Nos. 2:22-cv-00022-FL (DE 21); 7:22-cv-00123-FL (DE 26); 7:22-cv-00128-FL (DE 14); 7:22-cv-00135-FL (DE 23); 7:22-cv-00139-FL (DE 12)). Plaintiffs' claims are DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction due to failure to exhaust administrative remedies. The clerk is DIRECTED to close these cases.

---

[2] After briefing was completed on the instant motions, another judge of this court dismissed CLJA claims brought by different plaintiffs, on similar grounds for failure to exhaust administrative remedies. See, e.g., Fancher v. United States, ___ F.Supp.3d ___, No. 5:22-CV-315-D, 2022 WL 17842896, at *9 (E.D.N.C. Dec. 20, 2022). While not binding in the instant cases, those rulings provide additional persuasive authority for the determination here, where the arguments raised by plaintiffs in those cases are similar to the arguments raised in the instant cases.

SO ORDERED, this the 5th day of January, 2023.

                                                     LOUISE W. FLANAGAN
                                                     United States District Judge